UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| FELIPE GUZMAN DIAZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SAM OLSON Field Officer Director of )<br>Enforcement and Removal Operations, Chicago )<br>Field Office, Immigration and Customs )<br>Enforcement, )<br>KRISTI NOEM Secretary U.S. Department of )<br>Homeland Security, )<br>PAMELA BONDI U.S. Attorney General, )<br>TODD LYONS In his official capacity as Acting )<br>Director of Immigration and Customs )<br>Enforcement, )<br>BRISON SWEARINGEN Clay County Sheriff, )<br>)<br>Respondents. ) | No. 2:25-cv-00631-JRS-MKK |

## ORDER GRANTING PETITION FOR HABEAS CORPUS

Felipe Guzman Diaz ("Petitioner") is detained at the Clay County Justice Center in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within three days. Dkt. 1. Petitioner argues that ICE is unlawfully detaining him under a statute making him ineligible for bond. Respondents argue that Petitioner's detention is lawful and that the only available remedy, if any, is a bond hearing.

The Court finds that Petitioner is statutorily eligible for bond and that his continued detention without an opportunity for a bond hearing violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court **grants** the petition to the extent

1

that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Petitioner an individualized bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision.

I.      **Background**

Petitioner, who is a citizen of Mexico, entered the United States without inspection on December 5, 2023. Dkt. 8-1 at 1. On December 6, 2023, the Department of Homeland Security ("DHS") issued a Notice to Appear and placed Petitioner in removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). Dkt. 8-1 at 1. The Notice to Appear charges Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the INA [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* The "arriving alien" checkbox is unmarked. *Id.* He was ordered to appear before an immigration judge on October 13, 2027.

Petitioner resides in Illinois. Dkt. 1 ¶ 39. On October 17, 2025, ICE arrested Petitioner, he was detained without bond, and he has remained in ICE custody since then. Dkt. 1 ¶ 40; dkt. 8-1 at 5. Petitioner's arrest "was effectuated pursuant to a Warrant for Arrest, Form I-200, signed prior to the arrest." Dkt. 8-1 at 5. On December 16, 2025, an IJ denied Petitioner's request for a custody redetermination on the grounds that the IJ had no jurisdiction. Dkt. 8-1 at 7.

II.     **Discussion**

Petitioner claims that his current detention through application of 8 U.S.C. § 1225(b)(2) violates the INA (Count I); and that his detention without a bond redetermination hearing violates the Due Process Clause of the Fifth Amendment (Count II). Dkt. 1 ¶¶ 45–51. Respondents argue that, as to the statutory claim, application of § 1225(b)(2) to Petitioner is proper, and, as to the

constitutional claim, that Petitioner's detention is constitutional and that he can appeal the IJ's decision to the BIA or the Seventh Circuit Court of Appeals.

As will be explained below, the Court finds that Petitioner's detention is governed by § 1226(a) and that his detention is unlawful because he has not been afforded a bond hearing under that statute. Because Petitioner is entitled to habeas corpus relief on these grounds, the Court does not address the constitutional argument.

### A. Exhaustion

Respondents argue that the proper forum for the instant dispute is appeal of the IJ decision to the Board of Immigration Appeals and the Seventh Circuit Court of Appeals. Dkt. 8 at 12. Petitioner argues that any attempt to exhaust his administrative remedies would be futile because the BIA recently issued a precedential, binding decision holding that all noncitizens who entered without admission or parole are ineligible for § 1226(a) bond hearings. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

Respondents do not cite a statute requiring Petitioner to appeal the result of his bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring Petitioner to exhaust his administrative remedies here would be futile. As another trial court in the Seventh Circuit has noted, "[Respondents'] argument is Kafkaesque. Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue." *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025)

3

(internal quotes and citations omitted); see *H.G.V.U. v. Smith*, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025) (requiring BIA appeal futile in light of *Matter of Yajure*); see also *Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering bond hearing). The Court finds the reasoning applied in the foregoing cases persuasive, and in the absence of controlling authority to the contrary, finds that Petitioner is not required to exhaust his administrative remedies.

### B. Eligibility for Bond under 8 U.S.C. §§ 1226 and 1225

The merits of the petition revolve around Respondents' statutory authority to detain Petitioner while his removal proceedings remain pending. Petitioner argues that the statutory text and context make it so that Respondents can only lawfully detain him pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at 4–8. Respondents argue that Petitioner is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission." Dkt. 8 at 6-8.

The detention and removal of noncitizens are governed by 8 U.S.C. § 1225 and § 1226. In general, § 1226 applies to aliens already present in the United States, while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond . . . or
>
> (B) conditional parole.

8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to

5

1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### i. Petitioner Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The record shows that DHS is detaining Petitioner under § 1226. Petitioner was arrested pursuant to a warrant, and it is § 1226 that authorizes the arrest and detention of aliens with a warrant; § 1225 does not reference warrants. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). "[T]he Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

District court opinions that have found that noncitizens arrested in the interior were properly detained pursuant to § 1225 emphasize that in those instances, DHS did not issue a warrant for the alien's arrest and detention. *See, e.g., Sandoval v. Acuna*, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025) ("Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Petitioner is properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)"); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025) ("This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226."). In contrast, *Cirrus Rojas v. Olson, et al.*, No. 25-cv-1437-bhl, dkt. 20, (E.D. Wis. Oct. 31, 2025) found that a

petitioner's detention fell under § 1225 despite having been issued a warrant citing § 1226 and granted bond in a previous hearing. *See also Mejia Olalde v. Noem*, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025) (finding that the plain language of § 1225(b)(2) supports the conclusion that Petitioner, who had been living in the United States for 40 years, was subject to mandatory detention as an "applicant for admission."). Neither *Cirrus Rojas* nor *Mejia Olalde* compel the Court to conclude that § 1225 applies here. The cases are not identical factually, and, as explained below, the Court finds here that the nature and circumstances of Petitioner's arrest and proceedings support application of § 1226 rather than § 1225.

The text and context of the statute also support Petitioner's position that ICE's authority to detain him derives from § 1226(a) and not from § 1225(b)(2)(A). *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5 2025) (collecting cases); *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025) (stating that "Plaintiffs have the better argument on the current record" referring to argument that "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)."). Respondents argue that § 1225(b)(2) pertains to Petitioner because he is "seeking admission" and is an "applicant for admission" who is "not clearly and beyond a doubt entitled to be admitted." Dkt. 8 at 10.

Respondents' argument that Petitioner is "seeking admission" is unconvincing. "'[S]eeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all noncitizens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those

7

who have been present in the country for years are not actively 'seeking admission.'"). Petitioner is not "seeking admission." He entered the United States in 2023 and has lived here ever since. Noncitizens such as Petitioner are "seeking to remain in the United States" not seeking to be admitted. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025) (explaining that "seeking admission" means that a noncitizen must be actively "seeking" "lawful entry").

Respondents' attempt to turn "seeking admission" into a redundancy for "applicant for admission" is unconvincing. *See* dkt. 8 at 7–12. As the Seventh Circuit recently explained regarding the same argument, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Castañon-Nava*, 2025 WL 3552514, at *9 (quoting 8 U.S.C. § 1225(a)(1)). "[Congress] could easily have included noncitizens who are 'seeking admission' within the definition [of applicant for admission] but elected not to do so." *Id.* As such, Respondents' construction of "seeking admission" in § 1225(b)(2)(A) as merely repeating "applicant for admission" would render the phrase superfluous, "violating one of the cardinal rules of statutory construction." *Id.* (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). "[A]s the Supreme Court reminds us, if an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). Thus, the fact that Petitioner, by not being one who is "seeking admission," does not fit the statutory criteria to show that § 1225(b)(2) applies to him and instead adds more support to the conclusion that § 1225(b)(2) does not apply. *See Castañon-Nava*, 2025 WL 3552514, at *9

8

("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A).").

Furthermore, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions all of § 1225—not just § 1225(b)(1)—to apply broadly to "arriving" noncitizens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Petitioner "is not 'arriving' in the United States." Dkt. 8 at 7.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the

9

"[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Petitioner because he is an alien, who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 2025 WL 3552514, at *10 (quoting *Zadvydas*, 533 U.S. at 693); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As discussed above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556

10

U.S. 303, 314 (2009). Adopting Respondents' reading would render § 1226(c) completely unnecessary.

In sum, the record shows that Respondents arrested Petitioner pursuant to § 1226(a) and the text and context of § 1225 and § 1226 show that Petitioner may only be lawfully detained pursuant to § 1226(a).

### ii. Section 1226(e) Does Not Bar This Court's Jurisdiction Over the Petition

In the alternative, Respondents argue that Petitioner is lawfully detained under § 1226(a) "because he has the opportunity to receive a hearing before an Immigration Judge." Dkt. 8 at 13. Thus, Respondents assert, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Petitioner has or had an opportunity to receive a bond hearing where the IJ would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). Petitioner sought a custody redetermination, but the IJ denied the request on the basis that the IJ lacked jurisdiction to do so. Dkt. 8-1 at 7. Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Similarly, Petitioner is not challenging a discretionary judgment—he is challenging his ongoing detention without being given the

11

opportunity to seek a discretionary judgment regarding his custody. In sum, § 1226(e) does not preclude jurisdiction over the instant petition because it does not challenge a discretionary judgment denying or revoking bond.

### III. Conclusion

Petitioner is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, ordering an individualized bond hearing is appropriate and in the interest of justice here because detention under § 1226(a) is discretionary and the violation of the statute arises from Petitioner's detention without a bond hearing.

The Court **grants** the petition to the extent that, within **seven days** of this order, Respondents must either: (1) provide Petitioner with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision. Respondents must document that they have provided Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released him. Respondents **must file notice with the Court within four days** of either action.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 12/30/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Alush Kola
Law Offices of Al Kola
alkolalaw@yahoo.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov